IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| TINA DENMARK, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:12-CV-56 (WLS) |
| | : | |
| RPM, INC., *et al.*, | : | |
| Defendants. | : | |
| _____ | : | |

**ORDER**

Presently pending before the Court is Defendant TCI, Inc.'s Motion for Summary Judgment (Doc. 34) and Defendant Staffing People, Inc.'s Motion for Summary Judgment (Doc. 35). For the following reasons, Defendant TCI, Inc.'s Motion for Summary Judgment (Doc. 34) and Defendant Staffing People, Inc.'s Motion for Summary Judgment (Doc. 35) are **GRANTED.**

**I.    PROCEDURAL HISTORY**

Plaintiff Tina Denmark, an African American female, worked for TCI, Inc. d/b/a TCI Powder Coatings ("TCI") from April 6, 2009 until September 18, 2009. (Doc. 1 at ¶¶ 9 & 10.) She was placed in that position by The Staffing People, Inc. ("Staffing People"). (*Id.* at ¶ 9.) On April 17, 2012, by and through counsel, Plaintiff filed a Complaint in the above-captioned matter, asserting claims for gender discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.* (*See* Doc. 1.) On July 2, 2012, Defendants filed Answers. (Docs. 7 & 10.)

On April 3, 2013, Defendants moved for summary judgment on all claims in Plaintiff's complaint. (Docs. 34 & 35.) In support of summary judgment, Defendant TCI contends: (1) Plaintiff failed to satisfy the administrative prerequisite to suit under Title VII as to her gender discrimination claim; (2) Plaintiff's claims do not establish a prima

1

facie case of gender discrimination, sexual harassment, or retaliation; and (3) Plaintiff has failed to meet her burden of raising a factual dispute as to whether Defendant TCI's reasons for terminating her was pretext for discrimination. (*See* Doc. 34-1.) Defendant Staffing People's Motion for Summary Judgment is largely identical to that of Defendant TCI. (*See* Doc. 35-1.) On September 30, 2013, Plaintiff filed a Response in opposition to Defendants' Motions for Summary Judgment. (Doc. 38.) On October 18, 2013, Defendants filed a Reply. (Doc. 40.) Thus, the above-referenced Motions are ripe for review. *See* M.D. GA. L.R. 7.3.1(a).

## II. SUMMARY JUDGMENT STANDARD
### A. Federal Rule of Civil Procedure 56

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Chow v. Chak Yam Chau*, No. 12-15994, 2014 WL 92094, *3 (11th Cir. Jan. 10, 2014) (citing *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013)). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, No. 12-14291, 2014 WL 114125, *2 (11th Cir. Jan. 14, 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the non-moving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009). The

movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* FED. R. CIV. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

  **B.** **Local Rule 56**

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

3

M.D. GA. L.R. 56. Here, Defendants properly filed summary judgment motions with statements of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (*See* Docs. 34-2, 35-2.) Likewise, Plaintiff filed the proper response to Defendants' statements of material facts. (Doc. 39.) Having established the applicable standards, the Court will proceed to the facts.

### III.    RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Defendants' Answers (Docs. 7 & 10); Defendant TCI's Statement of Undisputed Facts (Doc. 34-2); Defendant Staffing People's Statement of Undisputed Facts (Doc. 35-1); and Plaintiff's Response to Defendants' Statements of Disputed Material Facts (Doc. 39); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See* FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 322-23.

Plaintiff was employed through Staffing People, which is a staffing agency. (Doc. 39 at ¶¶ 1, 2.) In April 2009, Staffing People placed Plaintiff at TCI as a quality control technician. (*Id.* at ¶¶ 3, 10.) TCI has one plant in Ellaville, Georgia, with two facilities at the same location; a main facility and a small batch plant. (*Id.* at ¶ 23.) When hired, Plaintiff initially worked at the small batch plant. (Docs. 34-7 at 92 lns. 1-7, 35-5 at ¶ 7.) Later, she was promoted to work in the main plant. (Docs. 34-7 at lns. 9-21, 35-5 at ¶¶ 9 & 10.)

Plaintiff's job duties at TCI were assigned by TCI. (Doc. 39 at ¶ 4.) Before beginning her assignment at TCI, Plaintiff was required to execute a check list thereby acknowledging the Policies and Procedures of Staffing People. (*Id.* at ¶ 5.) Staffing People required that, if Plaintiff was going to be late to work, she had to contact Staffing People and TCI. (*Id.* at ¶¶ 6 & 7.) Another policy stated that Staffing People would allow one instance of tardiness and one absence in the initial 90-day period, and each 90-day period thereafter. (*Id.* at ¶ 8.) Plaintiff was also aware that dismissal or

termination from her assignment at TCI would lead to termination from Staffing People.  (*Id.* at ¶ 9.)  TCI had the authority to require Plaintiff to arrive at work at a certain time, and had the right to discipline Plaintiff if she failed to follow the rules.  (*Id.* at ¶ 18.)  When Plaintiff started work at TCI, she was advised that she was required to work approximately forty hours per week.  (*Id.* at ¶ 19.)  Plaintiff worked that amount of time per week, and occasionally worked overtime.  (*Id.* at ¶ 20.)  During Plaintiff's employ at TCI, seven quality control technicians worked there, including Plaintiff.  (*Id.* at ¶ 11.)  Six of the technicians were female.  (*Id.* at ¶ 12.)  TCI had two shifts while Plaintiff was working there, and Plaintiff was given permission to work the first shift, 6:00 a.m.--2:00 p.m., so that she could be home when her children arrived from school.  (*Id.* at ¶¶ 15 & 16.)

Parking for the main facility at TCI was in the parking lot directly behind the main facility.  (*Id.* at ¶ 25.)  Parking was on a "first-come, first-served" basis.  (*Id.*)  TCI had one location where employees could clock in, which was located in the break room.  (*Id.* at ¶ 26.)  To clock in, Plaintiff was required to scan her hand and fingerprints using a machine.  (*Id.* at ¶ 27.)  Once a person's hands were presented to the machine without accoutrements, the scanning took a couple of seconds.  (*Id.* at ¶ 28.)  Although Plaintiff's shift started at 6:00 a.m., TCI had an unwritten practice of giving employees a five-minute grace period.[1]  (*Id.* at ¶ 24.)  Thus, Plaintiff would not be considered late unless she clocked in at 6:06 a.m. or later.  Plaintiff rode to work with Johnny Melton and Antonio Holmes. (Docs. 34-7 at 35 lns. 4-17, 35-5 at ¶ 5.)

---

[1] Defendants intimate that Plaintiff's assertion that TCI gave employees a five-minute grace period should be discounted because it is contradicted by her deposition testimony.  (*See* Doc. 40 at 3-4.)  However, the only deposition testimony identified by Defendants that relate to such a policy at TCI involve a question to Plaintiff as to whether she "knew that TCI expected you to clock in before 6:00?"  (*See* Doc. 34-1 at 13; 34-2 at ¶ 24.)  She answered "Yes."  (Doc. 34-7 at 85 lns. 22-24.)  The Court may disregard an affidavit because it is contrary to an answer given to an unambiguous question during a deposition.  *Lane v. Celotex Corp.*, 782 F.2d 1526, 1529-30 (11th Cir. 1986).  The Court finds that the referenced answer at the deposition was not contrary to Plaintiff's assertion regarding the grace period.  Even if TCI "expected" its employees to clock in before 6:00 a.m., it could have had an unwritten policy that allowed a five-minute grace period.  This conclusion is buttressed by Plaintiff's time sheet (*see* Doc. 34-8 at 14-19) and other portions of Plaintiff's deposition.  (*See* Doc. 34-7 at 75 lns. 12-21.)  Because facts must be construed in a light most favorable to the nonmoving party, the Court must accept as true Plaintiff's allegation that Defendant TCI had an unwritten policy of allowing a five-minute grace period.

5

Plaintiff was late—i.e. she clocked-in at or after 6:06 a.m.—four of five days that she was scheduled to work during the last week that she was employed at TCI. (Doc. 39 at ¶ 73.)  Of the six individuals that worked with Plaintiff as quality control technicians, none were late as often as Plaintiff.[2] (*Id.* at ¶ 47.)  During the week that Plaintiff was terminated, no other quality control technician was late to begin their 6:00 a.m. shift. (*Id.* at ¶ 84.)  Twenty-three individuals were terminated by TCI and Staffing People due to repeated tardiness and attendance issues within a one-year period of employment and Plaintiff's hire or separation from TCI. (*Id.* at ¶¶ 79 & 80; Doc. 35-3 at ¶ 19.)  Plaintiff never contacted Staffing People to advise that she was going to be late. (Doc. 39 at ¶ 68.)

Around June 2009, Larry Taylor said to Plaintiff, "When you going to let me get some?", "You got a big butt," and "I'd be good," under his breath. (Doc. 34-7 at 154 lns. 2-10.)  Mr. Taylor gave Plaintiff his telephone number and invited her to his home. (*Id.* at 156 lns. 4-6.)  In June 2009, Plaintiff called Mr. Taylor and visited his home twice. (*Id.* at 154 lns. 11-18.)  Around July 2009, Mr. Taylor confronted Plaintiff about telling another female employee, Janice, that they had spent time together outside of work. (*Id.* at 157-58.)  Mr. Taylor raised his voice while addressing Plaintiff and gestured with his arms, but otherwise did not use violence. (*Id.* at 137.)  Plaintiff never spoke with Mr. Taylor or Janice again. (*Id.* at 142-43.)  Other than those incidents, Mr. Taylor never said anything sexually inappropriate to Plaintiff or touched her while at TCI.[3] (*Id.* at 143 lns.

---

[2] In response to Defendants' assertion that "Of the six (6) individuals that worked with Plaintiff Denmark as quality control technicians, none were late as often as Plaintiff Defendant was," Plaintiff responded that she lacked sufficient information to form a belief as to the truth of that statement. (Doc. 39 at ¶ 47.) Under this Court's Local Rules, such a response "is not an acceptable response unless the party has complied with the provisions of Rule 56[] of the Federal Rules of Civil Procedure." M.D. GA. L.R. 56. Because Plaintiff did not comply with that Rule (*see* Doc. 38-1), that response and all like responses in Plaintiff's Response to Defendants' Statements of Material Facts are admitted. M.D. GA. L.R. 56.

[3] In her affidavit, Plaintiff states that "Soon after commencing work at the main facility, my direct supervisor, Larry Taylor, began to engage in inappropriate behavior toward me at work. The behavior consisted of frequent comments about my appearance and wardrobe, including comments that I had a 'big butt' and other comments of a sexual nature." (Doc. 38-1 at ¶ 6.) In her deposition, when asked whether Mr. Taylor made any other comments to Plaintiff other than three comments made in June 2009, Plaintiff said "No." (Doc. 34-7 at 142-43.) The Court finds that Plaintiff's assertion to the contrary in her affidavit is directly contrary to an unambiguous question that was asked during her deposition. As such, the referenced portion of her affidavit that relates to Mr. Taylor will not be considered.

5-20.) Plaintiff knew that Mr. Taylor did not have the ability take adverse employment actions against her. (*Id.* at 141-42.)

A group of individuals, including a person named Grady, whistled at Plaintiff 3-4 times per week. (*Id.* at 102-03.) Male employees, including Johnny Melton, made comments about Plaintiff's clothes about twice per month.[4] (*Id.* at 103; Doc. 39 at ¶ 29.) An employee named Henry once offered Plaintiff his telephone number. (Doc. 34-7 at 124-25.) Other than those instances and individuals, Plaintiff cannot remember any other specific details regarding inappropriate behavior at TCI. (*Id.* at 101.)

Another employee, known to Plaintiff as Mike, approached Plaintiff and told her that he was being harassed by other employees because he had given her a birthday card. (*Id.* at 95-96.) Mike expressed to Plaintiff that he thought she was also being mistreated. (*Id.* at 96, 98 lns. 11-14.) On September 18, 2009, Mike suggested to Plaintiff that they speak individually with Mark Blalock, Director of Human Resources, about the treatment that they were receiving by fellow employees at TCI. (*Id.*; *see* Doc. 35-5 at ¶ 4.) Mike spoke with Mr. Blalock first. (Doc. 34-7 at 96 lns. 6-20.) Later, Mike told Plaintiff that she should also speak with Mr. Blalock. (*Id.* at lns. 21-24.) Mike did not divulge the content of his conversation with Mr. Blalock to Plaintiff. (*Id.*) Plaintiff told Mr. Blalock that she believed she was being harassed, but did not provide specific details. (Doc. 39 at ¶ 53.) At that time, she was told that she was being terminated for excessive tardiness. (Doc. 38-1 at ¶ 8.) Mr. Blalock told Plaintiff that he had already informed Staffing People that she was being terminated. (Doc. 34-7 at 185 lns. 9-15; Doc. 35-5 at ¶ 25.) After Plaintiff left TCI the day that she was terminated, she

---

[4] In response to the question "How often would people whistle at you?", Plaintiff answered "Three, four times, yeah. I mean, a week." (Doc. 34-7 at 103 lns. 7-12.) In response to the question, "How often would people make comments about your clothes?", Plaintiff answered "Probably twice a month." (*Id.* at lns. 13-20.) Later in the deposition, when asked how often she encountered the male employees at TCI, Plaintiff responded "All day every day." (*Id.* at 177-178.) Plaintiff's affidavit, however, states that she was "subjected to harassment on a daily basis." (Doc. 38-1 at ¶ 7.) Also, in Plaintiff's Response to Defendants' Statement of Facts, she states that "[s]exually harassing comments regarding Plaintiff's clothing were made 'all day every day.' " (Doc. 39 at ¶ 30.) In support of that contention, she cites pages 177 and 178 of her deposition. (*Id.*) The referenced assertion regarding what occurred "all day every day" in Plaintiff's affidavit and response is a misrepresentation of what she said at her deposition. As such, the Court disregards those statements and instead relies on Plaintiff's deposition.

immediately traveled to Staffing People. (Doc. 34-7 at 106.) Staffing People informed Plaintiff that her termination from TCI warranted immediate termination from Staffing People. (*Id.*)

When Plaintiff was hired by TCI, Mr. Blalock told her that she should report any harassment to him. (*Id.* at 78 lns. 2-7.) Nonetheless, Plaintiff did not report any harassment to Mr. Blalock or any other supervisor at TCI until September 18, 2009. (Doc. 34-7 at 119 lns. 2-16.) Plaintiff never informed Staffing People of any issues pertaining to her employment at TCI until after her termination. (Doc. 39 at ¶ 22.) TCI had 2-3 supervisors on each shift. (*Id.* at ¶ 36.) Plaintiff's supervisors from May 11, 2009 through September 18, 2009, were Tim Battle (white male), Will Sellers (white male), Jack Carver (white male), Anthony Wall (white male), and Larry Taylor (black male). (*Id.* at ¶ 37.) Each supervisor was equal and Plaintiff could go to any of them with an issue. (*Id.* at ¶ 38.) There was no particular supervisor that Plaintiff would go to with an issue more than any other. (*Id.* at ¶ 39.) Larry Taylor, and all other above-named supervisors, did not have authority over Plaintiff's wage, the hours she worked, the shift she worked, or any other aspect of her position at TCI or Staffing People. (*Id.* at ¶ 42.) There was never a time when Larry Taylor was Plaintiff's only supervisor. (*Id.* at ¶ 45.) Mr. Taylor was not involved with Plaintiff's tardiness. (*Id.* at ¶ 48.)

**IV.     DISCUSSION**

     **A. Gender Discrimination**

As a preliminary matter, Defendants argue that Plaintiff's charge of discrimination was not sufficient to permit the Court to consider her gender discrimination claim. The Court disagrees. "A judicial complaint is limited by the scope of the EEOC investigation 'which can reasonably be expected to grow out of the charge of discrimination.' " *Penaloza v. Target Corp.*, No. 13-10446, 2013 WL 5828008, *3 (11th Cir. Oct. 31, 2013) (citing *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994)). " 'Courts are extremely reluctant to allow procedural technicalities to bar claims brought until Title VII' and should construe an EEOC complaint broadly." *Id.* (citing *Gregory v. Ga. Dept. of Human Resources*, 355 F.3d 1277, 1280 (11th Cir. 2004)). Because

8

Plaintiff indicated her belief that she was discriminated against on the basis of gender by checking the "sex discrimination" box, the Court finds that the scope of the investigation resulting from that charge could reasonably be expected to include gender discrimination.

### i. Substantive Merits of Plaintiff's Gender Discrimination Claim

When a plaintiff seeks to prove gender discrimination through circumstantial evidence, as does the Plaintiff in the instant case (*see* Doc. 23 at 4), the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of gender discrimination under Title VII, Plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees outside of her protected class, or was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

Defendants concede that Plaintiff is a member of a protected class, she was qualified for her position, and she was subject to an adverse employment action. (*See* Docs. 34-1 at 7, 35-1 at 5.) Also, Plaintiff does not contend that she was replaced by someone outside of her protected class. (*See* Doc. 38 at 9.) Thus, whether Plaintiff has made a prima facie case of discrimination turns on whether similarly situated employees outside of her protected class were treated more favorably. *See Rice-Lamar*, 232 F.3d at 842. "To make a comparison of the plaintiff's treatment" to the treatment of

an employee outside of the plaintiff's protected class, "the plaintiff must show that [s]he and the employee[] are similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (citations omitted). A plaintiff must "show that she was similarly situated to [a purported comparator] in terms of performance, qualifications, and conduct, 'without such differentiating or mitigating circumstances that would distinguish' their situations." *Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). To make such a showing, the plaintiff and the purported comparator must be similarly situated "in all relevant respects." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir. 2004) (citing *Holifield*, 115 F.3d at 1562). "The proffered comparator 'must be nearly identical to the plaintiff.' " *Id.*

"To establish a comparator in the disciplinary context, the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct." *Aristyld v. City of Lauderhill*, No. 13-12235, 2013 WL 5735159, *2 (11th Cir. Oct. 23, 2013) (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001) (citing *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 (11th Cir. 1998)). "When an individual [demonstrates] that [s]he was fired but one outside h[er] class was retained although both violated the same work rule, this raises an inference that the rule was discriminatorily applied against that individual." *Nix v. WLCY Radio/Rahall Commuc'ns*, 783 F.2d 1181, 1186 (11th Cir. 1984).

Plaintiff contends that Johnny Melton is an adequate comparator because Mr. Melton drove Plaintiff to work each day and allowed her to clock in before him. (Doc. 38 at 10.) Therefore, Plaintiff contends, if she had been legitimately fired for excessive tardiness, Mr. Melton would have been terminated for that reason as well. (*Id.*) Defendants assert that Mr. Melton is not an adequate comparator because Plaintiff's referenced assertion regarding her carpool arrangement with Mr. Melton is erroneous.

10

(*See* Doc. 34-1 at 7.) In support of that contention, Defendants submitted an affidavit from Mr. Melton indicating that, although he occasionally transported Plaintiff and Antonio Holmes to work, he did not transport Plaintiff to work the week of September 7, 2009 or September 14, 2009. (Doc. 35-4.) Defendants also submitted Mr. Melton's time sheets for those weeks, which indicate that Plaintiff and Mr. Melton worked different shifts those weeks. (Doc. 40-1.)

The Court finds that Johnny Melton is not an appropriate comparator. The Court cannot "weigh the evidence and determine the truth of the matter," but "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, Plaintiff has not controverted the referenced time sheets. Plaintiff's contention is blatantly contradicted by the time sheets, and Mr. Melton's assertion is supported by the time sheets. Accordingly, the Court finds that it "should not adopt [Plaintiff's] version of the facts for the purpose of ruling on [the] motion for summary judgment." *See id.* Because Plaintiff has identified no other employee who was tardy four out of five days during the week of her termination, she has failed to identify an appropriate comparator. Accordingly, the Court finds that Plaintiff has failed to meet her burden of establishing a prima facie case of gender discrimination.

Defendants argue that, even if Plaintiff met her prima facie burden, she cannot rebut Defendants' legitimate, non-discriminatory reason for her termination—to wit, excessive tardiness. The Court agrees. If Plaintiff demonstrated a prima facie case of discrimination, Defendants would have the opportunity to "rebut the presumption of discrimination by producing evidence that [there was] a legitimate, nondiscriminatory reason" for the adverse employment action. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "It is sufficient if the defendant's evidence raises a genuine

11

issue of fact as to whether it discriminated against the plaintiff." *Id.* at 254-55 (citing *Bd. of Trs. Of Keene State Coll. v. Sweeney*, 439 U.S. 24, 25 n.2 (1978)). Repeated violations of company policy constitute a legitimate non-discriminatory reason for termination. *Richardson v. JM Smith Corp.*, 473 F. Supp. 2d 1317, 1326 (M.D. Ga. 2007). The Court finds that Defendants met their burden of demonstrating a legitimate, non-discriminatory reason for Plaintiff's termination. (*See* Doc. 40-1.)

Once the defendant meets this burden, the plaintiff must raise a genuine issue of fact as to whether the proffered reason for the adverse employment action is pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 804-05. Relevant evidence to demonstrate pretext includes the employer's disparate treatment of similarly situated employees outside of the plaintiff's protected class and the defendant's "general policy and practice with respect to minority employment." *McDonnell Douglas*, 411 U.S. at 804-05. However, "[c]onclusory allegations, without more, are not sufficient to raise an inference of pretext . . . where an employer has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (citing *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 443-44 (11th Cir. 1996)). "[A] reason cannot . . . be 'a pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Faircloth v. Herkel Investments, Inc.*, 514 F. App'x 848, 850-51 (11th Cir. 2013) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original).

First, Plaintiff argues that the Georgia Department of Labor Hearing Officer's finding that Plaintiff did not violate the policies of Defendants TCI or Staffing People should be given preclusive effect. (Doc. 38 at 14.) The Court disagrees. Georgia law provides that "[a]ny finding of fact or law, judgment, determination, conclusion, or final order made by a[] . . . hearing officer . . . shall not be admissible, binding, or conclusive in any separate or subsequent action or proceeding . . . before any court of this state or the United States." GA. CODE ANN. § 34-8-122(a). Because the referenced finding was made by a hearing officer, that finding cannot be afforded preclusive effect.

As to pretext, Plaintiff first asserts that Defendants' explanation for her termination is "unworthy of credence" because Plaintiff had been tardy "at least 31 times, sometimes as much as an hour late, when during the week that Plaintiff was terminated, the most Plaintiff was late was eight (8) minutes." (*Id.* at 16.) It is unreasonable to conclude that Defendants' reason for terminating Plaintiff is unworthy of credence because her misconduct is, in fact, worse than Defendants claim. Although Plaintiff had been tardy on many previous occasions, Plaintiff fails to cite any other occasion where she had been tardy four out of five days in a one-week period. Thus, the Court finds no reason to discredit Defendants' explanation for Plaintiff's termination based on their previous conduct.

Second, Plaintiff claims that the temporal proximity between her termination and her complaint about sexual harassment indicate pretext. (*Id.*) The suspicion that could arguably arise from the temporal proximity between Plaintiff's termination and her complaint regarding harassment is undermined by the undisputed fact that Mark Blalock informed Plaintiff that Defendant Staffing People had already been put on notice before Plaintiff was terminated that she was being terminated for excessive tardiness. If Defendant TCI terminated Plaintiff because she complained of sexual harassment, it would not have been able to contact Defendant Staffing People prior to her complaint to notify it that Plaintiff was being terminated.

Lastly, Plaintiff maintains that the fact that Johnny Melton and Antonio Holmes, the male co-workers with whom she traveled to work, were not fired is cause to discredit Defendants' justification for her termination. (*Id.* at 16-17.) For the reasons stated above, Mr. Melton is not a proper comparator. Also, Plaintiff introduced no evidence to suggest that Mr. Holmes is a proper comparator. As such, the fact that they were not terminated is of no consequence and does not indicate pretext.

For the reasons stated above, Defendants' Motions for Summary Judgment (Doc. 34 & 35) on Plaintiff's gender discrimination claim are **GRANTED.**

### B. Sexual Harassment

Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Although Title VII does not mention sexual harassment, the Supreme Court and Eleventh Circuit have long held the phrase "terms, conditions, or privileges of employment" prohibits it. *Mendoza v. Borden, Inc.*, 195 F.3d 1239, 1244 (11th Cir. 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). To establish a prima facie case of sexual harassment, the Eleventh Circuit requires the plaintiff to establish the following:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

*Husley v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).

Defendants argue that they are entitled to summary judgment because, *inter alia*, Plaintiff cannot establish the fourth element. The Court agrees.

The Supreme Court has identified two ways sexual harassment can alter the terms and conditions of employment. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 724, 753 (1998). The two types of sexual harassment are *quid pro quo* harassment and hostile work environment harassment. Plaintiff asserts that she seeks to proceed only under the latter form of harassment. (Doc. 38 at 11.) As to that form of harassment, an employer may discriminate on the basis of sex with harassing conduct that is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Mendoza v. Borden, Inc.*, 195 F.3d 1239, 1245–46 (11th Cir. 1996) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Courts determine whether harassment is "sufficiently severe or pervasive" by looking at all of the circumstances. *Harris*, 510 U.S. at 23. The Court may consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically

14

threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* The inquiry has subjective and objective prongs— that is, "the employee must subjectively perceive the harassment as sufficiently severe and pervasive," and "this subjective perception must be objectively reasonable." *Guthrie v. Waffle House, Inc.*, 460 F. App'x 803, 806 (11th Cir. 2012) (quoting *Mendoza*, 1295 F.3d at 1246).

Plaintiff argues that she was "subjected to constant whistling, gestures and various other comments of a sexual nature 'all day every day.' " (Doc. 38 at 12.) Plaintiff asserts that Defendants should be charged with knowledge of the harassment at TCI because of previous complaints of harassment and, once Defendants were notified of the harassment, she was terminated. (*Id.* at 13.) Defendants argue that Plaintiff is attempting to suggest that the harassment was "all day every day," but her deposition testimony is contrary to such suggestion. (Doc. 40 at 7-8.) As such, Defendants assert that the claims in Plaintiff's affidavit that are contrary to her statements at her deposition should not be considered. (*Id.*) Defendants maintain that, viewing the evidence in such a light, it is clear that the behavior noted by Plaintiff is not sufficiently severe or pervasive to alter the terms of Plaintiff's employment. (*Id.*) Also, Defendants assert that, in any event, they cannot be held liable for sexual harassment because Plaintiff admits that she did not inform Defendants of the harassment until after the decision to terminate her employment had been made. (*Id.* at 7.)

"When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Lane v. Celotex Corp.*, 782 F.2d 1526, 1529-30 (11th Cir. 1986). At her deposition, when asked how many times she had to walk past male employees at TCI, Plaintiff responded, "All day every day." However, when asked about the frequency of specific sexually harassing conduct, Plaintiff provided specific answers. Because Plaintiff's affidavit appears to be an attempt to create an issue that would have otherwise not existed had Plaintiff's deposition testimony stood alone, the Court finds

15

that Plaintiff's affidavit is a sham that was created with the intention of creating a genuine issue of fact where one otherwise would not exist. As a result, Plaintiff must rely on the following allegations of harassment: (1) in or around June 2009, Larry Taylor made three comments that were sexual in nature to Plaintiff while at work; (2) Mr. Taylor gave Plaintiff his telephone number and invited her to his home; (3) Mr. Taylor told Plaintiff that she should not have disclosed their interactions outside of work to a fellow co-worker; (4) unidentified individuals whistled at Plaintiff 3-4 times per week; (5) Johnny Melton and other unidentified individuals made comments about Plaintiff's clothing approximately twice per month; (6) a co-worker named Henry offered Plaintiff his telephone number; and (7) an unidentified individual asked Plaintiff if she was having a sexual relationship with another employee at TCI.

These instances are not so severe and pervasive that they altered the terms of Plaintiff's employment. The Eleventh Circuit has held that far worse conduct was insufficient to objectively alter the terms of employment. For example, in *Mendoza v. Borden, Inc.*, the Eleventh Circuit found the following facts over an eleventh-month period insufficient to survive summary judgment:

> (1) one instance in which Page said to Mendoza "I'm getting fired up"; (2) one occasion in which Page rubbed his hip against Mendoza's hip while touching her shoulder and smiling; (3) two instances in which Page made a sniffing sound while looking at Mendoza's groin area and one instance of sniffing without looking at her groin; and (4) Page's "constant" following and staring at Mendoza in a "very obvious fashion."

194 F.3d at 1247. Likewise, in *Guthrie v. Waffle House, Inc.*, the Court considered conduct at a Waffle House restaurant that included a cook grabbing the plaintiff on the rear and making obscene sexual comments, including "want[ing] to 'fuck' her and 'lick' her 'all over' " and allowing her to pee in his mouth. 460 F. App'x 803, 804. This behavior, among other acts, fell "short of describing severe and pervasive harassment." *Id.* at 808. There was no evidence that the conduct affected the plaintiff's job duties or made her feel threatened. *Id.*

This case involves less serious conduct than that involved in *Mendoza* and *Guthrie*. The comments by Larry Taylor in June 2009, and his invitation to his home, were clearly not of the nature that Plaintiff found offensive. In fact, subsequent to Mr. Taylor's comments and invitation, Plaintiff visited Mr. Taylor's residence twice. Plaintiff discontinued her relationship with Mr. Taylor only after he admonished her for disclosing their relationship to another employee. Further, Henry's offer to exchange telephone numbers and another worker's question about Plaintiff's sexual conduct with other employees were isolated incidents. Plaintiff did not assert that these offers or questions occurred on an ongoing basis. Lastly, Plaintiff claims that other employees whistled at her 4-5 times per week, and people made comments about her clothing two times per month. Under the above-referenced precedent in the Eleventh Circuit, the comments and whistling were too infrequent to be considered severe and pervasive such that the terms of Plaintiff's employment were altered.

For the reasons stated above, Defendants' Motions for Summary Judgment (Doc. 34 & 35) on Plaintiff's sexual harassment claim are **GRANTED.**

### C. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in statutorily protected activity, (2) she suffered a materially adverse action, and (3) there was a causal connection between the protected activity and the materially adverse action. *Howard v. Walgreen Co.*, 605 F.3d 1239, 1244 (11th Cir. 2010). In the Eleventh Circuit, retaliation claims based on circumstantial evidence fall under the *McDonnell Douglas* burden-shifting framework. *Mulkey v. Bd. of Com'rs of Gordon Cnty.*, 488 F. App'x 384, 389 (11th Cir. 2012).

Under *McDonnell Douglas* burden-shifting, the plaintiff bears the initial burden of establishing her prima facie case. *Gardner v. Aviagen*, 454 F. App'x 724, 728 (11th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802–03). The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant does so, the plaintiff must make a showing that the nondiscriminatory reason was pretextual. *Id.*

17

The Court concludes that Plaintiff failed to meet her burden of establishing a prima facie case of retaliation. Even if Plaintiff's complaint to Mark Blalock was a statutorily protected activity, there is no causal connection between that activity and her termination. At her deposition, Plaintiff admitted that, when she was told that she was being terminated for excessive tardiness, Mr. Blalock informed her that he had already informed Defendant Staffing People of her termination. (Doc. 34-7 at 185 lns. 9-15.) Although Plaintiff stated in her Response to Defendants' Statement of Facts that Mr. Blalock did not make this statement, such assertion is directly contrary to the assertion made at her deposition. (*See* Doc. 39 at ¶ 51.) As such, that portion of Plaintiff's pleading will not be considered. Thus, the evidence is undisputed that Defendant TCI had already decided to terminate Plaintiff for excessive tardiness at the time it was informed that Plaintiff believed she was being sexually harassed. Further, Plaintiff did not inform Defendant Staffing People of her belief regarding sexual harassment until she had already been terminated. (*Id.* at ¶ 59.) Therefore, there is no evidence of a causal connection between Plaintiff's complaint of sexual harassment and her termination.

For the reasons stated above, Defendants' Motions for Summary Judgment (Doc. 34 & 35) on Plaintiff's sexual harassment claim are **GRANTED.**

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment (Doc. 34 & 35) are **GRANTED.** It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by her Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendants.

**SO ORDERED**, this   26th   day of March 2014.

/s/ W. Louis Sands  
W. LOUIS SANDS, JUDGE  
UNITED STATES DISTRICT COURT